**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CRYSTAL LYNN BAILEY, ) | |
| ) | CASE NO. 5:13-cv-01672 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Crystal Lynn Bailey ("Bailey") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability insurance Benefits ("DIB"), and Supplemental Security income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

**I. Procedural History**

On February 4, 2010, Bailey filed an application for POD, DIB and SSI alleging a disability onset date of June 1, 2009. (Tr. 16.) Her application was denied both initially and upon reconsideration. *Id*.

On November 21, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Bailey, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 16.) On November 30, 2011, the ALJ found Bailey was able to perform a significant number of

jobs in the national economy and, therefore, was not disabled. (Tr. 23-24.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-three (43) at the time of her administrative hearing, Bailey is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Bailey has at least a high school education and past relevant work as a telemarketer and registered nurse. (Tr. 23.)

*Relevant Hearing Testimony*

At the hearing, Bailey testified as follows:

- She has an Associate's degree. (Tr. 37.)

- She worked as a registered nurse from the 1980s until 2003. (Tr. 39.) She also worked as a telemarketer for six or seven months. (Tr. 40.) She was asked to leave the latter job for missing too much work. (Tr. 41.)

- It is very painful for her to walk and sit, and she does not have full mobility in her joints. (Tr. 45.) She experiences pain in her knees, ankles, shoulders and hip. (Tr. 46.) The pain in her joints is exacerbated by putting weight-bearing pressure on them or by staying in one position for too long. (Tr. 47.) She takes twenty milligrams of Methadone four times a day. (Tr. 57.) She also takes fifteen milligrams of Morphine four times each day. (Tr. 58.) Her pain medication's side effects include tiredness, slurred speech, and a "loopy" feeling. (Tr. 59-60.)

- She has difficulty taking care of her twin children due to pain, and she often enlists the aid of her mother or adult daughter to cook and care for them. (Tr. 45, 55-56.)

- The ALJ noted Bailey used a cane and asked if it was prescribed. Bailey responded in the affirmative. (Tr. 46.) She could stand maybe for a minute without a cane, but with a cane she could stand for about ten to twenty minutes so long as she could walk around. (Tr. 50.) She can hobble about ten feet without a cane. *Id*. She never goes out without her cane, which she had been using on a continuous basis for a year. (Tr. 50, 62.)

- She suffers two to three seizures a week, despite being on medication, that she described as "momentary" in nature. (Tr. 47-48.) She has a history of *grand mal* seizures, but had not experienced one since 1995 or 1996. (Tr. 48.)

The ALJ posed the following hypothetical question to the VE:

I would like you to assume a younger person with a high school and above education and the claimant's work history. Can perform sedentary work, but cannot climb ladders, ropes or scaffolds and can only occasionally climb ramps and stairs. Assume this person can only occasionally stoop, kneel, crouch or

2

> crawl.
>
> Assume this person must avoid all exposure to hazards such as dangerous machinery or unprotected heights.

(Tr. 65.)

The VE testified that such a person could perform Bailey's past relevant work as a telemarketer. (Tr. 65.) In addition, due to the transferability of skills, such a person could also perform the sedentary job of nurse consultant, as well as cardiac monitor technician. (Tr. 65-66.) In a second hypothetical, the ALJ added that the hypothetical person must alternate between sitting and standing every thirty minutes, but could still sit a total of six hours per day. (Tr. 66.) The VE indicated that while the telemarketer position would be eliminated, the other two jobs would remain available. (Tr. 66-67.) In a third hypothetical, the ALJ modified the second hypothetical by adding that such a person could sit for four hours per day and stand/walk for two. (Tr. 66.) The VE testified that such an individual could not maintain full-time employment. (Tr. 66.)

In a response to a question from Bailey's counsel, the VE testified that an individual off task fifteen percent of the time is generally not deemed to be competitively employable. (Tr. 67.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Bailey was insured on her alleged disability onset date, June 1, 2009, and remained insured through June 30, 2011. (Tr. 18.) Therefore, in order to be entitled to POD and DIB, Bailey must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Bailey established medically determinable, severe impairments, due to "myoclonic epilepsy, degenerative disc disease of the lumbar spine, lumbar spondylosis, degenerative changes in both knees, degenerative changes in the first left metatarsophangeal, gouty arthritis, osteoarthritis of the left hip and obesity." (Tr. 18.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 19.) Bailey was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for less than a full range of sedentary work. (Tr. 20, 23.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Bailey was not disabled. (Tr. 23-24.)

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

**VI. Analysis**

In her first assignment of error, Bailey asserts that the RFC finding is not supported by substantial evidence because: (1) the ALJ found her claimed limitations generally credible yet failed to incorporate those limitations into the RFC; (2) the ALJ rejected the findings of a functional capacity evaluation that was supported by the record; and, (3) the ALJ did not address Bailey's need to use a cane while standing or her inability to maintain attendance or to stay on task. (ECF No. 14 at 10.) In her second assignment of error, Bailey asserts that the ALJ's credibility analysis was insufficient and contradicted the RFC finding. *Id*. at 14-15. These two assignments of error are interrelated and will be addressed together.

As the Court understands these arguments, Bailey asserts that the ALJ either did not sufficiently explain why he found her purported need to use a cane less than credible or found her need for a cane credible, but omitted the need for such a device from the RFC. Because she was limited to sedentary work with a need to alternate positions every thirty minutes, Bailey argues that inclusion of an additional limitation – that she use a cane for ambulation and balance – may have eroded the occupational base to such an extent that sufficient jobs would not be available. (ECF No. 14 at 12.)

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. 20 C.F.R. §§ 404.1529 & 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting

6

that "this court has previously held that subjective complaints of pain may support a claim for disability"). It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step evaluation process. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.") Beyond medical

7

evidence, there are seven factors that the ALJ should consider.[2]

Here, the ALJ's credibility determination is somewhat confusing.  The ALJ found "the claimant's allegations generally credible."  (Tr. 22.)  Just a page earlier in the opinion, however, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."[3]  (Tr. 21.)  While the ALJ's decision

---

[2]  The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

[3]  Though this language is found in almost every decision, the Court finds this sort of conclusory language circular in logic and, without additional explanation, rather unhelpful. Others courts have expressed frustration with this kind of reasoning.  *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) ("Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case.") (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004); *Vasquez v. Astrue*, 2013 WL 491977 at *8 (D. Ariz. Feb. 18, 2013) (the ALJ's assertion that the "[claimant's] statements 'are not credible to the extent they are inconsistent with the above residual functional capacity assessment' – is circular.  The ALJ cannot determine the RFC and then look at [the claimant's] statements; the RFC is supposed to incorporate those statements."); *Hoy v. Colvin*, 2013 WL 4010593 at *5 (W.D. Va. June. 19, 2013); *Gadke v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 138432, 2013 WL 5428727 (N.D. Ohio, Sept. 26, 2013) ("Most other district courts in the Sixth Circuit that have addressed *Bjornson* have agreed that it is basically meaningless for the ALJ to simply state the boilerplate language without further analysis, but have concluded that the ALJ in their cases adequately explained the credibility determination—which determination was supported by substantial

mentions some of Bailey's daily activities, her use of a cane, her description of some of her limitations, and the medications she takes to treat her pain, the ALJ's decision is devoid of any actual analysis as to Bailey's credibility. (Tr. 21-22.) Stated another way, the ALJ fails to explain whether he found Bailey credible as to her level of pain, whether he found her need to use a cane credible, whether her medications were effective in reducing her symptoms, or whether her activities of daily living corroborated or undermined her credibility. A rote recitation of the claimant's testimony and some of the medical evidence followed by a conclusory statement deprives this Court of the ability to conduct a meaningful review. "The determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, 1996 SSR LEXIS 4, Purpose section; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence."); *see also Lewis v. Colvin*, 2013 WL 4517252 at *11 (S.D. Cal. Aug. 21, 2013) ("A reviewing court should not be forced to speculate as to the grounds for an [ALJ's] rejection of a plaintiff's allegations of disabling pain.") (*citing Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.1991)). Simply put, the omission from the RFC of any need for a hand-held assistive device leads this Court to the inescapable conclusion that the ALJ found Bailey was not credible as to her purported need to use a cane. However, nowhere in the decision does the ALJ actually state that he found Bailey to be less than credible in this regard, let alone explain *why*.

Nevertheless, the Commissioner argues that Bailey has failed to demonstrate that a hand-held assistive device was medically required and points to Social Security Ruling ("SSR") 96-9p,

---

evidence in the record.") (citations omitted).

1996 SSR LEXIS 6, which states as follows:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case.  For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. [footnote 7]  For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> [footnote 7] Bilateral manual dexterity is needed when sitting but is not generally necessary when performing the standing and walking requirements of sedentary work.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p, 1996 SSR LEXIS 6, 1996 WL 374185 (1996).

The Commissioner argues that Bailey's use of the cane was not medically required, because medical documentation neither established the need for a hand-held assistive device, nor described the circumstances under which it would be necessary.  (ECF No. 15 at 14.)  The Commissioner's argument, however, points to evidence in the record capable of supporting such a finding rather than relying on the reasons articulated by the ALJ.  The Commissioner's argument is not entirely unpersuasive.  Nonetheless, while the Commissioner may ultimately be correct in arguing that the medical record fails to establish Bailey's need for a hand-held assistive device, the ALJ made no such determination.  The Court cannot engage in *post hoc*

10

rationalizations. *See S.E.C. v. Chenery*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947) (a reviewing court must judge the propriety of agency action "solely by the grounds invoked by the agency"). It is not for this Court to be the first to decide whether the medical evidence established that the use of a hand-held assistive device was medically required under the regulations.[4]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

                                          s/ Greg White
                                          United States Magistrate Judge

Date: May 28, 2014

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

---

[4] Furthermore, this case it not one where the medical record is wholly devoid of evidence suggesting that the need for cane might be medically required. On both March 3, 2011 and June 9, 2011, treatment notes indicate that, upon objective/physical examination, Bailey ambulated "with difficulty" and "with a cane." (Tr. 346, 355.) On September 15, 2011, objective treatment notes also indicate that Bailey ambulated with a cane. (Tr. 421.) Bailey had asked for a walker, and the treatment plan indicated that a walker would be prescribed for her. *Id*.